IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN WASHINGTON, | § | |
| Plaintiff, | § § § | |
| v. | § | Civil Action No. 3:17-CV-0001-BK |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | § § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION**

Pursuant to the parties' consent, Doc. 16, this case has been reassigned to the Magistrate Judge. The Court now considers the parties' cross-motions for summary judgment. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 15, is **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 18, is **DENIED**, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** for further proceedings.

**I. BACKGROUND**

**A.   Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). In September 2012, Plaintiff filed for SSI, claiming that he had become disabled in August 2011 due to arthritis and high blood pressure. Doc. 12-7 at 6. His application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 12-3 at 2, 22; Doc. 12-5 at 3, 20.

B.  **Factual Background**

At the time of the administrative hearing, Plaintiff was 51 years old and had completed the tenth grade and attended a vocational trade school. Doc. 12-3 at 46-47. He had previous work experience as a warehouse laborer, driver, and cafeteria worker. Doc. 12-3 at 47-48; Doc. 12-4 at 27. However, he had no past relevant work within the meaning of the Act. Doc. 12-3 at 11-12.

In terms of his medical history, Plaintiff has been treated in the emergency room for high blood pressure, bilateral knee pain, back pain and bilateral hand pain. Doc. 12-8 at 5-10; Doc. 12-9 at 4-6, 28-30, 35; Doc. 12-10 at 16, 27-29; Doc. 12-11 at 4, 16-18, 28-30, 36; Doc. 12-12 at 4, 10, 27. An MRI of Plaintiff's lumbar spine revealed a minimal diffuse disc bulge at L2-L3 without spinal canal stenosis. Doc. 12-11 at 36. In December 2012, imaging of Plaintiff's left knee revealed that he had a medial meniscal tear, degenerative joint disease, and degenerative changes in the lateral meniscus. Doc. 12-11 at 38.

In February 2013, a consultative examination of Plaintiff was performed by Dr. Mahmood Panjwani, M.D. Plaintiff's chief complaints were chronic low back pain and arthritis with bilateral knee pain, which he stated was progressively worsening. Doc. 12-12 at 45. The physical examination revealed that Plaintiff was 6'1" tall, weighed 231 pounds, his blood pressure was 150/86, he had full motor strength in all muscle groups tested, full grip strength, and normal fine finger movements. Doc. 12-12 at 47-48. Plaintiff was unable to bend down fully, he was only able to do a three quarter squat, he had discomfort in his knees and back when

walking on his toes and heels, and he had crepitus and slightly decreased range of motion in both knees. Doc. 12-12 at 48, 50.

In March 2013, Dr. Patty Rowley, M.D., reconsidered Plaintiff's disapproved SSI claim and determined that Plaintiff had the residual functional capacity ("RFC") to (1) occasionally lift/carry 20 pounds and frequently lift/carry ten pounds; (2) stand/walk for four hours in an eight-hour workday; (3) sit for six hours in an eight-hour workday; and (4) he could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl. Doc. 12-4 at 25. Dr. Rowley concluded that Plaintiff could perform light work, limited by his ability to stand/walk for only four hours. Doc. 12-4 at 27.

Subsequently, Plaintiff submitted additional medical records to the ALJ, documenting treatment he had received from February 2013 through August 2014. In February 2013, an x-ray of Plaintiff's right knee revealed tricompartmental degenerative changes, but no acute displaced fracture or dislocation. Doc. 12-13 at 4. Imaging of his left knee was largely unchanged in comparison to his prior test, but revealed significant change in fluid adjacent to the semi-membranous muscle. Doc. 12-13 at 5. A March 2013 MRI of Plaintiff's right knee reflected degenerative changes in the menisci and cartilaginous defects. Doc. 12-13 at 5-6. Plaintiff noted that prescription NSAIDS were somewhat effective for managing his pain. Doc. 12-13 at 19.

In August 2013, Plaintiff underwent bilateral knee arthrocentesis (synovial fluid aspiration). Doc. 12-13 at 37-38. However, in November 2013, Plaintiff reported that his knee pain had gotten progressively worse and Naproxen, which he'd been taking for the prior nine months, provided only minimal relief. Doc. 12-13 at 38. The following month, Plaintiff

3

underwent a left knee arthroscopy, meniscectomy and partial medial meniscectomy operation. Doc. 12-13 at 41. Two weeks after the surgery, Plaintiff was seen in the orthopedic department of the hospital by Dr. Stephanie Baker, M.D. She noted that his incisions were well healed, and he was experiencing mild effusion and swelling. Doc. 12-13 at 46. Dr. Baker advised Plaintiff to continue on Naproxen, use an Ace wrap, and start quadricep strengthening exercises, and she opined that Plaintiff "will need TKA [total knee replacement] in the future." Doc. 12-13 at 46.

When Plaintiff returned to the orthopedic department in January 2014, he stated that his pain was about the same as it was before surgery, but his knee was not locking or catching any more. Doc. 12-13 at 47. He was advised that he should have a similar procedure performed on his right knee. Doc. 12-13 at 47. Plaintiff underwent bilateral knee injections to which his right knee responded and he obtained mild relief on the left. Doc. 12-14 at 10-11.

**C.**    **The ALJ's Findings**

In May 2015, the ALJ denied Plaintiff's application for SSI benefits. The ALJ first held the Plaintiff had the severe impairments of "essential hypertension, bilateral knee pain, status post left knee medial meniscectomy, osteoarthritis of bilateral knees, and degenerative disc disease." Doc. 12-3 at 12. The ALJ concluded, as had Dr. Rowley, that Plaintiff retained the RFC to perform a reduced range of light work, limited by his ability to stand/walk for approximately four hours in an eight-hour workday. Doc. 12-3 at 14. The ALJ determined, based on testimony from a vocational expert, that Plaintiff was not disabled because he could still perform the jobs of laundry folder, assembler and parking lot cashier. Doc. 12-3 at 21-22.

4

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational

Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their citation to the supporting evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III. ARGUMENT AND ANALYSIS

Plaintiff argues that the RFC was not supported by substantial evidence because the medical records he submitted after Dr. Rowley's review indicate that he is more limited than he previously was, which may result in a finding that he is disabled. Doc. 15 at 17. He contends

6

that the ALJ shirked his duty to weigh Dr. Baker's opinion and assessed his RFC without the benefit of a doctor's testimony as to what kind of work he could do.[1] Doc. 15 at 14-17.

Defendant responds that the ALJ considered and discussed the additional medical records that were submitted, noting the generally normal nature of Plaintiff's condition. Doc. 19 at 9-10. Additionally, Defendant maintains that the ALJ did not need to discuss every piece of medical evidence, such as Dr. Baker's treatment records, and the ALJ explicitly stated that he had considered all of the evidence of record. Doc. 19 at 10.

The Court of Appeals for the Fifth Circuit has held that an "ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits[,]" and "[i]f the ALJ does not satisfy his duty, his decision is not substantially justified." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The administrative record in this case establishes that Plaintiff's bilateral knee condition had further deteriorated in the more than two years between Dr. Rowley's review and the ALJ's decision. Indeed, the medical evidence of record suggests that Plaintiff is more limited in his abilities than he was at the time Dr. Rowley assessed his case.

An ALJ owes a duty to a Social Security claimant to develop the record fully and fairly so as to ensure that the ALJ's decision is based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam). An ALJ's decision must be reversed if the ALJ failed to fulfill this duty to develop the record, and the claimant was prejudiced thereby. *Id.* While an ALJ generally should request a medical source statement describing the types of work that the

---

[1] Plaintiff also argues that the ALJ erred at step 5 of the sequential analysis. However, that argument need not be addressed because the Court concludes that the ALJ erred at an earlier step in the analysis.

7

claimant is still capable of performing, the absence of such a statement does not make the record incomplete if the ALJ's decision is otherwise supported by substantial evidence in the existing record. *Ripley*, 67 F.3d at 557.

In this case, more than two years elapsed between Dr. Rowley's assessment of Plaintiff's RFC and the ALJ's decision. During that time, the evidence of record reveals that the condition of Plaintiff's knees continued to deteriorate. Doc. 12-13 at 5-6, 38. Medication which had provided him relief previously was no longer effective. Doc. 12-13 at 38. Plaintiff also had numerous medical procedures performed on his knees, and his orthopedist noted that he would require a total knee replacement on the left. Doc. 12-13 at 37-38, 41; Doc. 12-14 at 10-11. Despite these significantly changed circumstances, the ALJ essentially adopted Dr. Rowley's assessment and concluded that Plaintiff had the RFC to perform light work as limited by his ability to stand/walk for four hours in a workday. Doc. 12-3 at 14.

On this record, the undersigned cannot conclude that the ALJ's decision was supported by substantial evidence. *Brock*, 84 F.3d at 728. The ALJ should have requested a medical source statement describing the types of work Plaintiff could do given his limitations. *Ripley*, 67 F.3d at 557. The ALJ's failure to do so here prejudiced Plaintiff because, had such a report been obtained, the outcome might have been different. For example, if the ALJ found that Plaintiff was limited to sedentary work, a finding of "disabled" would be directed under the Grids because Plaintiff met the required criteria at the time of the ALJ's decision. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2 § 201.09 (directing a finding of disabled when an individual is closely

8

approaching advanced age [age 50-54], has a limited education, has no past relevant work, and is limited to a sedentary RFC). Plaintiff is entitled to summary judgment on this ground.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 15, is **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 18, is **DENIED**, the Commissioner's decision is **REVERSED,** and the case is **REMANDED** for further proceedings consistent with this opinion and order.

**SO ORDERED** on October 5, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE